**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| **Charles E. McInnis,** | ) | **Civil Action No.:_____** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **TransUnion, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1.    This is an action brought by Plaintiff, Charles E. McInnis, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2.    The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.    The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4.    Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5.     To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b) and 1681i, which are two of the cornerstone provisions of the FCRA.

6.     One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7.     The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

8.    This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

9.    Venue is proper in the Florence Division because the Plaintiff resides in Marlboro County, and the Defendant transacted business in this division.

## PARTIES

10.    Plaintiff, Charles E. McInnis, is a resident and citizen of the State of South Carolina, Marlboro County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

11.    Defendant TransUnion, LLC, ("TransUnion") is a limited liability company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492.  At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

12.    Defendant TransUnion is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

13.    Defendant disburses such consumer reports to third parties under contract for monetary compensation.

14.    Defendant's acts and omissions alleged herein are in violation of the Fair Credit

3

Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

15.     The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's credit file, failed to reinvestigate Plaintiff's disputes, and failed to block fraudulent information from Plaintiff's credit report after receipt of a police report. Defendant also disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

16.     In December 2025, Plaintiff was sued by a collection company for an account that did not belong to him.

17.     After being served with the lawsuit, Plaintiff went online to check his credit reports and discovered he was the victim of identity theft.

18.     On or about December 9, 2025, Plaintiff obtained a copy of his TransUnion credit report. In reviewing his credit report, Plaintiff discovered that numerous accounts had been opened in his name without his knowledge. Additionally, other information was reporting on his credit report that did not belong to him.

19.     On or about December 10, 2025, Plaintiff sent a dispute letter to Defendant stating he had been the victim of identity theft and, upon reviewing his credit report, discovered

multiple fraudulent accounts and other information reporting that was incorrect. Specifically, American Credit Acceptance, Acct. No. 4720013576113****; Cavalry Portfolio Svcs, Acct. No. 2258****; LVNV Funding LLC, Acct. No. 517805981369****; Midland Credit Management Inc., Acct. No. 32764****; Midland Credit Management Inc., Acct. No. 32804****; Portfolio Recovery, Acct. No. 604583121832****; and Capital One, Acct. No. 517805960042****, (hereinafter collectively referred to as the "Accounts"). In addition, Plaintiff disputed hard inquires for Capital One and Synchrony Financial, and account review inquiries for Capital One, Syncb/Syncb, Portfolio Recovery Assoc, Creditwise Capital1 TU-C, 364110039 via Creditwise Capital1 TU-B, Charles McInnis via Creditwise Capital1 TU-A, Midland Credit Management, and Cavalry Portfolio Service as Plaintiff did not have accounts with any of these entities. Plaintiff also disputed four (4) addresses at which Plaintiff has never lived, and five (5) phone numbers Plaintiff has never used. Finally, Plaintiff requested Defendant add a fraud alert to his credit file. With his letter, Plaintiff provided his full Social Security number, date of birth, and address.

20. Defendant received Plaintiff's dispute on December 16, 2025.

21. Defendant did no reinvestigation of Plaintiff's December 10, 2025, dispute.

22. On or about December 19, 2025, Defendant sent a letter regarding "Remedying the Effects of Identity Theft."

23. On or about December 23, 2025, Defendant sent Plaintiff a postcard informing him a fraud alert was added to his TransUnion credit report.

24. On or about December 24, 2025, Defendant sent Plaintiff a letter informing Plaintiff that Capital One had obtained Plaintiff's TransUnion credit report "in what was deemed a

fraudulent application.  As a result, TransUnion has deleted the inquiry from your credit report."

25.     Thereafter, on or about December 27, 2025, Defendant sent Plaintiff Investigation Results to Plaintiff's December 10, 2025, dispute, wherein Defendant informed Plaintiff the Capital One, Acct. No. 517805960042**** had been deleted from Plaintiff's credit report.  Unfortunately, the remaining fraudulent Accounts were verified as accurate and updated.  With the investigation results, Defendant provided an updated credit report which confirmed the Capital One Account was deleted.  However, the remaining fraudulent Accounts continued to be reported as derogatory Accounts belonging to Plaintiff.

26.     On or about February 4, 2026, Plaintiff sent Defendant a second dispute letter wherein Plaintiff informed Defendant he had received its Investigation Results, but only one fraudulent account, the Capital One Account, had been removed from his credit report. Plaintiff again disputed the remaining Accounts as fraudulent accounts and asked they be removed from his credit report.  Plaintiff informed Defendant the Midland Credit Management Account Nos. 32764**** and 32804**** were fraudulent accounts, that Midland Credit Management sued him and dismissed the case due to fraud. Plaintiff provided a copy of the case dismissal with his dispute.  Plaintiff disputed the phone number (843) 454-1540 reporting on his credit report as that number belonged to his estranged wife and it was associated with the fraudulent accounts.  Plaintiff also disputed hard inquiries from Capital One and Synchrony Financial as he did not apply for credit from either entity. Lastly, Plaintiff again disputed multiple Account Review Inquiries from entities with which he did not have accounts. With his letter, Plaintiff provided his full Social Security

number, date of birth, and address.

27.    Defendant received Plaintiff's second dispute letter on February 9, 2026.

28.    Defendant did no investigation of Plaintiff's February 4, 2026, dispute.

29.    On or about February 12, 2026, Defendant sent Plaintiff a letter stating that it had previously completed an investigation concerning Midland Credit Management Acct. No. 32764****, Midland Credit Management Acct. No.32804***, and LVNV Funding, LLC, Acct. No. 517805981369****, and therefore refused to reinvestigate Plaintiff's dispute despite stating in its letter that "unless you have additional relevant information that supports the change you are requesting (i.e. a letter from the… courthouse…). Plaintiff had specifically provided additional relevant information to support his dispute of the Midland Accounts by including a copy of the case dismissal in the Midland lawsuit with his February 4, 2026, dispute letter.

30.    On that same day, Defendant sent Plaintiff a letter regarding "Remedying the Effects of Identity Theft."

31.    Also on that day, Defendant sent Plaintiff Investigation Results informing Plaintiff the telephone number reporting on his credit report was updated. With the Investigation Results, Defendant provided an updated credit report, wherein the fraudulent American Credit Acceptance, LVNV Funding, LLC, Midland Credit Management Inc, Acct. No. 32764****, and Midland Credit Management Inc, Acct. No. 32804****, Accounts were still reporting as belonging to Plaintiff.

32.    On or about April 1, 2026, Plaintiff sent Defendant a third dispute letter. In his letter, Plaintiff stated he had received Defendant's letter, Investigation Results, and credit

report and the only change to his credit report was a phone number. Plaintiff again informed Defendant numerous fraudulent accounts were continuing to be reported as belonging to him on his credit report. Plaintiff asked for the fraudulent LVNV Funding, LLC, Midland Credit Management Inc., Acct. No. 32764**** and Midland Credit Management Inc., Acct. No. 32804 Accounts to be removed. Plaintiff also again disputed the Capital One October 15, 2025, hard inquiry as he did not apply for credit with Capital One, and requested all account review inquiries by Capital One be deleted. Plaintiff again disputed the May 17, 2025, hard inquiry for Synchrony Financial as fraudulent as he did not apply for credit with Synchrony Financial. Lastly, Plaintiff disputed account review inquires for Portfolio Recovery Assoc, Creditwise Capital1 TU-C, 364110039 via Creditwise Capital1 TU-B, Charles McInnis via Creditwise Capital1 TU-A, Midland Credit Management, and Cavalry Portfolio Service. With his letter, Plaintiff provided a copy of the police report he filed regarding the fraud, his full Social Security number, date of birth, and address.

33.     Defendant received Plaintiff's third dispute on April 7, 2026.

34.     Defendant did no reinvestigation of Plaintiff's April 1, 2026, dispute.

35.     On or about April 8, 2026, Defendant sent Plaintiff a letter regarding "Remedying the Effects of Identity Theft," enclosing a copy of Plaintiff's rights under the Fair Credit Reporting Act.

36.     On that same day, Defendant sent a second letter to Plaintiff stating it had received Plaintiff's fraud block request with regard to American Credit Acceptance, Acct. No. 4720013576113****, but refused to block the information because "either the item

8

reflected a history of previous payments made, a history of previous disputes, other than ownership, or was opened prior to when the fraud was reported to have occurred." Defendant never blocked any of the fraudulent Accounts despite receipt of Plaintiff's police report.

37.    To date, Defendant continues to wrongfully refuse to block the fraudulent American Credit Acceptance, Cavalry Portfolio Svcs, LVNV Funding LLC, and both Midland Credit Management Inc., accounts from Plaintiff's TransUnion credit file.  Accordingly, each of those fraudulent accounts continues to be reported on Plaintiff's credit report as a derogatory account belonging to Plaintiff.  Defendant also continues to wrongfully report the fraudulent hard inquires for Capital One and Synchrony Financial.  Finally, Defendant continues to wrongfully report account review inquiries for accounts not belonging to Plaintiff.

38.    To date, Defendant continues to wrongfully allow disputed, unauthorized entities to obtain and/or view Plaintiff's credit report.

39.    Defendant repeatedly failed to make a reasonable reinvestigation into Plaintiff's disputes.

40.    Upon receipt of the ACDV responses from the furnishers of the disputed account information, Defendant simply accepted the furnishers' verifications of the Accounts and did not undertake to perform any reinvestigation of its own.

41.    For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information.  The CRA must make some independent investigation of its own.  "Merely

reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

42.     If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

43.     Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

44.     While Defendant has continued to report false, fraudulent, and inaccurate information on Plaintiff's credit reports, those credit reports have been viewed by Capital One, Synchrony Financial, Credit Fresh Marketing, Axcess Financial/CNGO, Cap One Auto, Security Finance Corporation, AF Holdco LLC, TBOM/Vervent-Total Visa, CB Indigo, Warehouse Home Furnishing Distributions, Mission Lane WebBank, Creditwise Capital1 TU-C, Syncb/Syncb, Syncb/Car Care Discount Tire, Portfolio Recovery

10

Associates, Shellpoint Mortgage Svc, Midland Credit Management, Avante USA, Radius Global Solutions, American Coradius Intl, Medical Debt Resolution via ECMedical Debt Resolution, Cavalry Portfolio Service, CPC Credit Vision,, Constar Financial Srvcs, Synergetic Communication Inc, and Lockhart Morris Montgo.

**COUNT ONE**
(Fair Credit Reporting Act)

45.    The Plaintiff adopts the averments and allegations of paragraphs 15 through 44 hereinbefore as if fully set forth herein.

46.    Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to:  (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

47.    Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

48.    As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, lost credit opportunities, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, time spent trying to fix his TransUnion credit report, physical pain and sickness, frustration, humiliation,

11

embarrassment, mental anguish, and out-of-pocket expenses.

49.     Plaintiff is entitled to actual damages in an amount to be determined by the jury.

50.     In addition, the Plaintiff has incurred litigation expenses and attorney's fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

51.     Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681o(a)(2).

## COUNT TWO
(Fair Credit Reporting Act)

52.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 51 hereinbefore as if fully set forth herein.

53.     Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to:  (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

54.     Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

55.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

56.     As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, lost credit opportunities, anxiety, worry,

fear, loss of sleep, headaches, loss of enjoyment of life, time spent trying to fix his TransUnion credit report, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out-of-pocket expenses.

57.    Plaintiff is entitled to actual damages in an amount to be determined by the jury.

58.    In addition, the Plaintiff has incurred litigation expenses, and attorney's' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

59.    Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights.  Therefore, Defendant is liable to the Plaintiff for punitive damages  in an amount to be determined by the jury.

60.    Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681n(a).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.    Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.    For this trial to be heard by a jury; and

E.    For such other and further relief as the Court may deem just and proper.

/s/ Penny Hays Cauley
Penny Hays Cauley, Fed.  ID No.  10323
Attorney for Plaintiff

13

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ Penny Hays Cauley
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Trans Union, LLC
c/o The Prentice-Hall Corporation System, Inc.- Registered Agent
100 Coastal Drive, Suite 210
Charleston, SC 29492

14